[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Milhoan,* Slip Opinion No. 2014-Ohio-5459.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-5459

DISCIPLINARY COUNSEL *v.* MILHOAN.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Milhoan,*

Slip Opinion No. 2014-Ohio-5459.]

*Attorneys—Misconduct—Excessive fees—Handling a legal matter without adequate preparation—Conduct adversely reflecting on fitness to practice law.*

(No. 2014-0201—Submitted April 8, 2014—Decided December 17, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2012-040.

_____

**Per Curiam**.

{¶ 1} Respondent, Douglas Alan Milhoan of Middlebranch, Ohio, Attorney Registration No. 0073219, was admitted to the practice of law in Ohio in 2001.

{¶ 2} On May 14, 2012, relator filed a complaint with the Board of Commissioners on Grievances and Discipline, charging Milhoan with two violations of the Disciplinary Rules of the Code of Professional Conduct and three

violations of the Rules of Professional Conduct arising from his conduct in filing of virtually identical briefs in 31 of 35 criminal appeals that he was appointed to handle from decisions of the Ashland County Court of Common Pleas from 2006 to 2010. Milhoan waived his right to a probable-cause hearing, and after he filed his answer, the matter was set for hearing.

{¶ 3} At the January 16, 2013 hearing, a panel of the board received the parties' stipulations of fact and 36 stipulated exhibits and heard testimony from Milhoan. The day before the hearing, Milhoan had disclosed to relator that he had been abusing alcohol at the time of his misconduct. He testified that he began drinking excessively during a series of challenges in his personal life including his responsibilities as the primary caretaker for his mother (who had suffered a stroke in 1993), juggling his responsibilities for his mother's care with those of parenthood following the birth of his first child in 2004, his mother's declining health leading up to her death in late 2004, and several other losses of a more personal nature in subsequent years. He explained that he had not previously mentioned his drinking problem, because he was ashamed and did not want to use it as an excuse for his misconduct. He reported that he had stopped drinking in January 2011 and had attended a couple of Alcoholics Anonymous meetings with a neighbor but stated that he had never spoken with a professional about his problem. After hearing Milhoan's testimony, the panel continued the hearing to enable him to obtain an evaluation through the Ohio Lawyers Assistance Program ("OLAP").

{¶ 4} When the hearing resumed on October 21, 2013, the panel heard additional testimony from Megan R. Snyder, M.S.W., L.I.S.W., of OLAP, and Milhoan. Thereafter, the panel issued a report containing findings of fact and conclusions of law and recommending that we suspend Milhoan for one year but stay that suspension on the condition that he make restitution of $8,757.50 to the Ohio Public Defender's Office and the Ashland County auditor by paying 50

percent of his disposable income until the debt is paid in full. The board adopted the panel's report in its entirety.

{¶ 5} We adopt the board's findings of fact and misconduct. We suspend Milhoan from the practice of law in Ohio for two years, all stayed on the conditions that he engage in no further misconduct, remain in compliance with his OLAP contract, and make restitution of $8,757.50, to be apportioned between the Ohio Public Defender's Office and the Ashland County auditor according to the percentage that each office pays toward the fees for court-appointed counsel in Ashland County.

## Misconduct

{¶ 6} Since being admitted to the bar in 2001, respondent has been a solo practitioner. In recent years, his practice has consisted of court-appointed work, primarily in juvenile court. But from 2006 to 2010, the Ashland County Court of Common Pleas appointed Milhoan to handle 35 criminal appeals. Of those 35 cases, 31 involved appeals from guilty pleas. In each of those cases, Milhoan filed appellate briefs that were identical except for certain "case-specific modifications such as names, dates, crimes, sentences, and potential mitigation," according to the stipulations.

{¶ 7} The parties stipulated and the board found that each brief (1) was ten pages long, (2) repeated the same grammatical errors, (3) raised the same assignment of error—"The imposition of a prison sentence in this case imposes an unnecessary burden on state's resources"—(4) failed to cite any case law in support of the assigned error, and (5) failed to include any information regarding the cost of incarceration or why the appellant's sentence would burden the state's resources. The briefs cited only one case (for the definition of clear and convincing evidence) and four sections of the Revised Code—three related to sentencing and one regarding appeal as a matter of right. And although these 31

briefs were virtually identical, in 29 of these cases, Milhoan requested at least three extensions of time to file his appellate briefs.

{¶ 8} Milhoan challenged relator's allegation that he did not provide good service for the criminal defendants he was appointed to represent, explaining that the majority of the appeals were taken from convictions upon guilty pleas and did not present any appealable issues. Although he acknowledged that his briefs were sloppy, he testified that when he filed them, he believed that they were better than *Anders* briefs. *See Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) (permitting an attorney who, after conscientious examination of the record, concludes that a criminal appeal is wholly frivolous to so advise the court and request permission to withdraw, provided that his request is accompanied with a brief identifying anything in the record that could arguably support the client's appeal). He now recognizes that it would have been more appropriate to file *Anders* briefs in many of these cases.

{¶ 9} Milhoan fully acknowledged that he did not keep proper track of the time he spent on his appellate cases, testifying that he would "go back and recreate [his] time" when he completed his fee applications. He submitted fee applications to the Fifth District Court of Appeals in 28 of the 31 cases involving appeals of guilty pleas, billing an average of 18.49 hours ($924.50) per case. And he admitted that in three instances he billed two separate clients for the same drive to the Ashland County clerk of courts to file briefs (approximately 3.0 hours round trip). Relator calculated that Milhoan double-billed for 8.5 hours of travel time, for a total of $425, and Milhoan did not object to this calculation. After relator notified him of the investigation, Milhoan elected not to submit fee applications for approximately 12 pending appellate matters that he had been appointed to handle.

{¶ 10} The parties stipulated and the panel and board found that Milhoan violated DR 6-101(A)(2) (prohibiting a lawyer from handling a legal matter

4

without adequate preparation) and Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client) by submitting nearly identical briefs in 31 separate cases without providing any case law to support his sole assignment of error. He also violated Prof.Cond.R. 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee) by failing to properly track the hours he spent working on each case and submitting fee applications with inflated hours. Lastly, the board found that Milhoan's practice of filing of nearly identical briefs for each of his indigent clients' criminal appeals provided those clients with substandard representation, the egregiousness of which was further compounded by his continuous pattern of overbilling the appointed-counsel system for this substandard work. Therefore, the board made the additional finding that his conduct adversely reflected on his fitness to practice law in violation of DR 1-102(A)(6) and Prof.Cond.R. 8.4(h) (both prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 11} Having determined that they are supported by clear and convincing evidence, we adopt the board's findings of fact and misconduct.

**Sanction**

{¶ 12} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B).

{¶ 13} The board found that just two aggravating factors are present. First, Milhoan engaged in a pattern of misconduct, submitting what was essentially the same brief in 31 separate cases and billing an average of 18.49 hours ($924.50) for what was in effect the same work. *See* BCGD Proc.Reg.

10(B)(1)(c). And while noting that there was no evidence that any of Milhoan's clients suffered harm as a result of his conduct, the board found that the judicial system and the public were harmed by his overbilling for indigent representation. *See* BCGD Proc.Reg. 10(B)(1)(h); *Disciplinary Counsel v. Holland*, 106 Ohio St.3d 372, 2005-Ohio-5322, 835 N.E.2d 361, ¶ 22 (overbilling the state for providing representation to indigent clients causes "serious harm * * * to the taxpaying public, the judicial system, and the legal profession").

{¶ 14} As mitigating factors, the board found that Milhoan has no prior disciplinary record, has accepted full responsibility for his misconduct, has provided full and free disclosure to the board, has maintained a cooperative attitude toward the disciplinary proceedings, and has a positive reputation in the legal community apart from the charged misconduct. *See* BCGD Proc.Reg. 10(B)(2)(a), (d), and (e). He has also been diagnosed with a chemical dependency on alcohol that contributed to his misconduct, has entered into a three-year contract with OLAP requiring him, among other things, to attend at least two Alcoholics Anonymous ("AA") meetings per week, has achieved a sustained period of full remission, and has received a prognosis from a qualified healthcare professional that he is capable of practicing law in a competent, ethical, and professional manner. When the hearing reconvened on October 21, 2013, Megan Snyder testified that as part of Milhoan's OLAP contract, he had been attending at least three AA meetings per week, had obtained a sponsor, had been calling to check in with OLAP three times per week, and had begun individual counseling to deal with low-level depression. Therefore, the board concluded that his alcohol dependency qualified as a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g).

{¶ 15} Relator recommended that Milhoan be suspended from the practice of law in Ohio for at least one year but that the suspension be fully stayed. Relator stated that neither the Ohio Public Defender's Office nor the Ashland

County auditor offered any estimate on the amount of restitution that should be ordered. And acknowledging the difficulty of determining the value of the services Milhoan had provided, relator suggested that Milhoan be required to pay restitution of $8,757.50—representing 50 percent of the fees charged in the cases at issue, plus the $425 he overbilled for trips he made to the Ashland County clerk of court, with a credit of $5,400 representing one-half of the fees he agreed to forgo in 12 additional appellate cases.

{¶ 16} In support of its recommended sanction, the board relies on our decisions in *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, and *Disciplinary Counsel v. Holland*, 106 Ohio St.3d 372, 2005-Ohio-5322, 835 N.E.2d 361.

{¶ 17} Agopian submitted inaccurate fee applications for court-appointed work, some of which gave the appearance that he had performed more than 24 hours of work on a given day. We found, however, that while he did not accurately record the specific number of hours that he spent on each case or the exact days on which he had performed the work, he had actually performed all of the work for which he had billed. Indeed, the evidence demonstrated that he routinely performed services far exceeding the time for which he submitted payment requests. Acknowledging that Agopian did not have a prior disciplinary record or possess any exploitative motive, and crediting him for his full cooperation in the disciplinary process, his acceptance of responsibility for his conduct, and the more than 40 letters attesting to his integrity, reputation, and professionalism, we rejected the recommended sanction of a one-year suspension and concluded that a public reprimand was the appropriate sanction for Agopian's misconduct.

{¶ 18} Holland, in contrast, did not apportion the per-hour charges for his services in court on a given day among his court-appointed cases. If he represented three separate clients in a single three-hour court session, he would

claim three hours for each client, regardless of the amount of time he spent on the individual case. Holland's in-court billing sometimes exceeded the number of hours that the juvenile court in which he practiced was open each day. This billing practice resulted in outrageous fees, although the overcharges were not readily apparent, because each case was billed on a separate form and filed at a separate time. Finding that Holland's pattern and practice of double billing was dishonest and deceptive and that its impropriety should have been obvious to him, we rejected the board's recommended sanction of a one-year suspension with six months stayed on conditions and imposed a one-year actual suspension from the practice of law and conditioned his reinstatement on the payment of full restitution.

{¶ 19} The board determined that Milhoan's conduct, when considered with the relevant aggravating and mitigating factors, falls somewhere between that of Agopian and Holland. Therefore, the board recommends that we suspend Milhoan for one year but stay the entire suspension on the conditions that he engage in no further misconduct and remain in compliance with his OLAP contract. The board further recommends that Milhoan be required to make restitution of $8,757.50, but noting that his income in 2012 was just $12,919, the board recommends that he be required to pay 50 percent of his disposable income until the obligation is paid in full.

{¶ 20} We believe that a two-year suspension stayed on conditions is the appropriate sanction for Milhoan's misconduct. We agree that he should be required to make restitution of $8,757.50 to be apportioned between the Ohio Public Defender's Office and the Ashland County auditor according to the percentage that each office pays toward the fees for court-appointed counsel in Ashland County.

{¶ 21} Accordingly, Douglas Alan Milhoan is suspended from the practice of law in Ohio for two years and ordered to make restitution of $8,757.50 to be

apportioned between the Ohio Public Defender's Office and the Ashland County auditor according to the percentage that each office pays toward the fees for court-appointed counsel in Ashland County. The entire suspension shall be stayed on the conditions that he engage in no further misconduct, remain in compliance with his OLAP contract, and make full restitution to the Ohio Public Defender's Office and the Ashland County auditor. If Milhoan fails to comply with the conditions of the stay, the stay will be lifted and he will serve the full two-year suspension. Costs are taxed to Milhoan.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Scott J. Drexel, Disciplinary Counsel, and Joseph M. Caligiuri, Senior Assistant Disciplinary Counsel, for relator.

Douglas Alan Milhoan, pro se.

_____